**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| THOMAS S. ROWDEN<br>8 Lucas Ave<br>Newport, RI 02840<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES<br>DEPARTMENT OF THE NAVY<br>2000 Navy Pentagon<br>Washington DC 20350<br><br>Defendant | ) | COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF<br><br>Case no. 1:24-cv-02393 |

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. §552, for injunctive and other appropriate relief seeking the release of records improperly withheld by the Department of the Navy by its failure to respond to a properly submitted request for records and request for expedited processing.

## INTRODUCTION

2. Plaintiff, Thomas S. Rowden, submitted a FOIA request to the Department of the Navy on January 26, 2024, requesting records related to the actions of former Secretary of the Navy (SECNAV) Richard Spencer's decision to reduce Plaintiff in rank from Vice Admiral (VADM) to Rear Admiral (RADM), particularly the former SECNAV's statements regarding his intent to hold then-VADM Rowden accountable for a high profile collision and his pre-conceived decision to reduce then-VADM Rowden's rank prior to issuance of the findings about VADM Rowden's

conduct and contrary to the Department of Defense Instruction constraining the authority for such a reduction in rank to the Secretary of Defense.

3. RADM Rowden requested specific communications, identified by dates and parties involved, and other specifically identified documents relevant to the former SECNAV's decision. RADM Rowden also requested expedited consideration, explaining the records are necessary to potentially supplement a pending BCNR appeal and to evaluate potential litigation options.

4. To date, the Navy has not responded to RADM Rowden's request for expedited processing, has not requested additional time to respond to RADM Rowden's FOIA request, has not provided any responsive records, and has not acted to deny or claim an exemption as to any part of RADM Rowden's request, despite statutory timelines requiring such action by February 5 and February 26, 2024.[1]

## JURISDICTION AND VENUE

5. The Court has jurisdiction over this action pursuant to 5 U.S.C. §552 (a)(4)(B) and 28 U.S.C. §1331.

6. Venue is proper in this district pursuant to 28 U.S.C. §1391(e).

7. RADM Rowden has exhausted his administrative remedies in accordance with 5 U.S.C. §552(a)(6)(C)(i).

[1] Within 10 days and within 20 business days of receiving the FOIA request, pursuant to 10 U.S.C. §§ 552(a)(6)(E)(ii)(I) and (a)(6)(A)(i).

## PARTIES

8. Plaintiff, Thomas Rowden, is a retired Naval officer. He obtained the rank of Vice Admiral (VADM) but was reduced in rank to Rear Admiral (RADM) by the improper actions of former SECNAV Spencer. Plaintiff submitted a FOIA request to the Defendant related to the actions of former SECNAV Spencer, with a request for expedited processing, on January 26, 2024.

9. Defendant, the Department of the Navy, is a federal agency within the meaning of 5 U.S.C. §552(f)(1), and has possession, custody, and control of records Plaintiff seeks. Defendant has failed to respond in any manner to Plaintiff's FOIA request or request for expedited processing.

## STATEMENT OF FACTS

10. In August of 2014, VADM Rowden was assigned to serve as Commander, Naval Surface Forces (CNSF) and Commander, Naval Surface Force, U.S. Pacific Fleet (SURFPAC). During his tenure, VADM Rowden made significant improvements to the surface Navy's readiness by diligently raising standards and improving formality in an effort to remedy years and decades of problems.

11. As CNSF/SURFPAC, VADM Rowden's authority over Forward-Deployed Naval Forces (FDNF) ships was virtually non-existent. VADM Rowden held only Administrative Control (ADCON) over FDNF ships. Operational Control (OPCON) was held by the Seventh Fleet Commander, who regularly and routinely overrode VADM Rowden's ADCON by sending ships to sea on missions they were neither qualified for nor certified to execute. Without notification to or discussion with VADM Rowden, FDNF ships were continuously pulled from maintenance and training periods to execute fleet tasking.

12. VADM Aucoin served as the Seventh Fleet Commander responsible for fleet training, readiness, and certification practices of FDNF ships in the Seventh Fleet.

13. VADM Rowden was responsible to man, train, equip, and certify the ships at the unit level.

14. The Commander, Fleet Forces Command was the sole Manning Control Authority for all afloat forces globally. VADM Rowden thus had no authority over the manning of Surface Force ships, as it was tightly and exclusively controlled by Commander, Fleet Forces Command.

15. In the summer of 2017, the Surface Navy suffered two separate and deadly collisions involving FDNF ships in the Seventh Fleet: the USS Fitzgerald and the USS John S. McCain.

16. Admiral James Caldwell was appointed as the Consolidated Disposition Authority (CDA) to investigate both collisions and make decisions on accountability.

17. On November 20, 2017, VADM Rowden submitted his request for voluntary retirement with an effective date of March 1, 2018.

18. In early December 2017, then-SECNAV Spencer openly stated that he had decided to reduce VADM Rowden, a 3-star, to a 2-star, or Rear Admiral, in front of multiple witnesses. At the time he made these statements, the investigation was ongoing and the CDA had not yet issued any findings about VADM Rowden's accountability.

19. On January 14, 2018, the CDA issued his findings in which he "did not find evidence that [VADM Rowden's] personal conduct directly led to either collision." The CDA concluded that VADM Rowden "failed to institute acceptable Fleet training, readiness and certification practices for Forward Deployed Naval Forces – Japan ships," but that it was "truly an exception to an otherwise noteworthy career. He also found "VADM Rowden's strong leadership of the Surface Navy in the wake of the collisions" to be "noteworthy." Nonetheless, in weighing the complexity, scope and tragic consequences of the collisions, he recommended VADM Rowden be relieved of command.

20. VADM Rowden voluntarily stepped down from his position on January 18, 2018, two weeks prior to his planned change-of-command.

21. On January 19, 2018, the Chief of Naval Personnel endorsed VADM Rowden's retirement package and, after "consider[ing] the nature and seriousness of this case; the actions and leadership shown by this officer in the wake of the collisions;" and other factors, recommended VADM Rowden be retired as an O-9 (VADM).

22. The Judge Advocate General of the Navy, VADM Crawford, also reviewed VADM Rowden's retirement request and found his "retirement in the grade of vice admiral or rear admiral is legally unobjectionable." However, on information and belief, VADM Crawford was advising SECNAV Spencer behind the scenes on how to implement his pre-determined conclusion in spite of the lack of finding by the CDA.

23. VADM Rowden submitted a statement to SECNAV in response to the CDA determination. Therein, he highlighted the governing documents that delineate training and certification roles and responsibilities for the Commander, Naval Surface Force, U.S. Pacific Fleet (SURFPAC) and the Commander, U.S. Seventh Fleet (C7F): **Fleet** training and certification is the responsibility of C7F, while **unit** (ship) training and certification is the responsibility of SURFPAC. While shortfalls were certainly identified for future improvement, both of the ships involved in collisions were fully trained at certified at the unit level under the then-existent standard for the operations they were conducting at the time of the collisions.

24. VADM Rowden's statement also identified the myriad problems and deficiencies within the Surface Warfare Community he had recognized and taken steps to address upon stepping into the role of CNSF/SURFPAC:

a. Prior to VADM Rowden's command, his predecessors eliminated school based initial training for Surface Warfare Officers. VADM Rowden recognized that this lack of training degraded the readiness and competence of Surface Warfare Officers. To remedy the damage, VADM Rowden restored the SWOS Division Officer Course.

b. VADM Rowden established the Surface and Mine Warfighting Development Center to fill a void in the practice and professionalism of Surface warfighting.

c. VADM Rowden established a training continuum for Surface Force ships to address the significant gap between the skills ships have following basic unit level training and what the ships need to take advantage of the training and certification provided by Fleet Commanders.

d. VADM Rowden created a program to target the most talented junior officers for specialized training to lay the groundwork for populating Warfare Tactics Instructors, tactical experts of Surface Warfare.

e. VADM Rowden attacked what he recognized as a monumental readiness issue resulting from downsizing and the out-sourcing of almost all repair and overhaul capabilities. He worked closely with Naval Sea Systems Command (NAVSEA) and other major stakeholders to address the issue, with the understanding that building the repair capability the fleet needs will take decades.

f. VADM Rowden restored funding and started correcting, to the limits of his authority, manpower and manning problems created by his predecessors, who had decimated the manning of ships under the guise of "optimal manning" and chronically underfunded manpower accounts.

g. VADM Rowden established the necessary programs to ensure the success the Guided Missile Cruiser Phased Modernization, the first-ever attempt to modernize ships while saving operations and maintenance cost, reduce their manning and extend their service life.

h. VADM Rowden established a governing body to oversee all aspects of ship maintenance and instituted a series of summits to discuss elimination of issues preventing on-time work completion in order to address issues that have long plagued surface force material availability, resulting in a significant reduction in maintenance overruns for deploying ships.

i. VADM Rowden established waterfront-centric current readiness codes to attack readiness issues.

j. VADM Rowden conductied a top to bottom review and update of Surface Warfare doctrine and tactics that had lain fallow for decades, resulting in hundreds of updated and approved documents.

k. VADM Rowden overhauled the fleet introduction of the Littoral Combat Ship program to correct longstanding issues with crewing, deployment preparations and individual ship training and certification, employment, and command and control.

l. VADM Rowden created and implemented programs to address serious issues of cyber security, cyber awareness, cyber readiness and cyber training.

m. VADM Rowden authored numerous articles and spoke often on the merits of "distributed lethality" of the Navy, as opposed to the post-Cold War strategy of concentrating the Navy into aircraft carriers and submarines. This was subsequently adopted as the Navy's strategy, now known as Distributed Maritime Operations

(DMO). As Vice Admiral, RADM Rowden originated and provided the backbone of the strategy the Navy is executing today.

25. On March 16, 2018, SECNAV Spencer submitted a Memorandum to the Secretary of Defense (SECDEF) stating his intent to retire VADM Rowden at a lower grade and claiming this decision was based on the CDA recommendation.[2]

26. On March 19, 2018, VADM Rowden reverted to the rank of RADM pursuant to 10 U.S.C. § 601, as he had been out of his 3-star position for more than 60 days.

27. On March 29, 2018, SECNAV Spencer ordered the CDA to supplement his determination, allegedly "in order to inform my decision in regards to Rear Admiral Rowden's retirement grade."

28. On information and belief, SECNAV Spencer, advised by VADM Crawford, communicated to the CDA what his desired outcome was to ensure that the new report was written in a manner that would support this conclusion.

29. On April 20, 2018, the CDA submitted a new report to provide facts and opinions to support SECNAV Spencer's decision. The CDA identified that "the systems that Vice Admiral Rowden inherited for training and certifying basic level readiness for FDNF ships had inherent weaknesses that were the product of an erosion of standards and organization drift over many years" and that weak assessment practices occurred over years and did not start during VADM Rowden's tenure. However, because VADM Rowden had the responsibility to detect these weaknesses and instill higher standards, the CDA maintained his recommendation that VADM Rowden did not meet his responsibilities and should be relieved of command.

[2] The CDA recommendation was only to relieve VADM Rowden of command. It did not include a recommendation to reduce VADM Rowden's rank and, seemingly to the contrary, specifically commented on VADM Rowden's strong leadership as a Vice Admiral.

30. Upon information and belief, the CDA did not see VADM Rowden's rebuttal statement outlining all of the deficiencies and weaknesses he had recognized and taken steps to address.

31. On April 27, 2018, RADM Rowden submitted a Memo to SECNAV regarding his retirement grade recommendation. He pointed out the dysfunctional Command and Control structure he had been directed to work within, under which the structure for FDNF-J constituted a single exception to the worldwide model, whereby the Seventh Fleet Commander was the arbiter of readiness and operations and had the authority to waive certifications. RADM Rowden pointed out that the CDA's findings fail to capture the crucial point that the Seventh Fleet Commander maintained the authority and control to ensure the necessary training levels and certifications were current. In hindsight, RADM Rowden acknowledged he could have been more forceful with the Seventh Fleet Commander to ensure he was fully aware of the risk he was assuming by waiving certifications.

32. On May 21, 2018, SECNAV Spencer submitted a revised Memorandum to SECDEF, noting that VADM Rowden had already been demoted to 2-stars and relying upon the revised CDA report to support his recommendation to retire VADM Rowden at the lower rank of RADM.

33. Because SECDEF must be advised at least 21 days in advance of SECNAV's actions to retire at a lower grade, VADM Rowden's retirement date was changed to July 1, 2018.

34. On June 15, 2018, SECDEF accepted SECNAV Spencer's intended course of action. RADM Rowden was retired from the U.S. Navy at the rank of RADM on July 1, 2018.

35. VADM Aucoin, the Seventh Fleet Commander who was actually responsible for the two collisions, was permitted by SECNAV Spencer to retire as a Vice Admiral.

36. Shortly thereafter, on September 5, 2018, the Court of Appeals for the Armed Forces issued an opinion upholding a finding that VADM Crawford, who had advised Spencer on reducing

VADM Rowden's rank, committed Unlawful Command Influence by illegally interfering with a criminal proceeding. A week later, on September 12, 2018, VADM James Crawford, retired from the Navy. Despite the military's highest court finding that VADM Crawford committed Unlawful Command Influence, SECNAV Spencer allowed him to retire as a Vice Admiral.

37. On November 24, 2019, SECNAV Spencer was forced to resign after it was discovered that he had circumvented the chain-of-command and was attempting to rig an administrative process to ensure a pre-determined outcome.

38. In June of 2021, RADM Rowden petitioned the Board for Correction of Naval Records, requesting a correction to his naval record to reflect the retirement grade of Vice Admiral on the basis that former SECNAV Spencer unjustly and inappropriately held him accountable for actions for which he was not responsible and failed to understand the command and control structure of forces in the Seventh Fleet, and inappropriately delayed RADM Rowden's retirement process to take advantage of the statutory reversion in rank.

39. RADM Rowden has not yet received a decision or advisory opinion from the BCNR.

40. On January 26, 2024, through Counsel, RADM Rowden submitted a FOIA request to the Navy seeking records related to the actions of former SECNAV Spencer and timing of his decision to reduce RADM Rowden in rank from Vice Admiral to Rear Admiral. Att. A.

41. RADM Rowden requested expedited processing as the information is necessary to potentially supplement a BCNR appeal currently pending before ASN M&RA, as well as to evaluate potential litigation options.

42. RADM Rowden has not received a response to his FOIA request or his request for expedited processing, or any indication from the Navy that additional time is required.

## CLAIM FOR RELIEF

### FIRST CAUSE OF ACTION:
### Failure to Search and Disclose Records

43. RADM Rowden repeats, realleges and incorporates, as fully set forth herein, the facts and allegations contained above.

44. RADM Rowden's FOIA request reasonably described the records sought.

45. RADM Rowden submitted his FOIA request in accordance with the Navy's FOIA Guidelines.

46. RADM Rowden made a request for records either created or obtained by the Navy and in the Navy's control at the time of the FOIA request.

47. Defendant violated 5 U.S.C. § 552(a)(3) by failing to promptly provide records in response to RADM Rowden's FOIA request.

48. Defendant violated 5 U.S.C. §552(a)(6)(A)(i) and 32 C.F.R. §701(g) by failing to inform RADM Rowden of a decision or need for an extension of time within 20 working days.

49. RADM Rowden has a legal right to obtain such records, and no legal basis exists for the Defendant's failure to disclose them.

### SECOND CAUSE OF ACTION:
### Failure to Grant or Deny Expedited Processing

50. RADM Rowden repeats, realleges, and incorporates, as fully set forth herein, the facts and allegations contained above.

51. Defendant violated 5 USC § 552(a)(6)(E) (ii)(I) and 32 C.F.R. § 701.8(f)(5) by failing to grant or deny RADM Rowden's request for expedited processing within 10 days of the date of the request.

## REQUESTED RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Order Defendant to conduct searches for any and all responsive records to Plaintiff's FOIA request and demonstrate that it employed search methods reasonably likely to lead to the discovery of records responsive to Plaintiff's FOIA request;

B. Order Defendant to produce immediately, any and all non-exempt records to Plaintiff's FOIA request;

C. Enjoin Defendant from continuing to withhold any and all non-exempt records responsive to Plaintiff's FOIA request;

D. Order Defendant to consider and act on Plaintiff's request for expedited processing;

E. Order Defendant to grant Plaintiff a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(viii);

F. Grant Plaintiff an award of attorney's fees and other litigation costs reasonably incurred in this action pursuant to 5 U.S.C. §552(a)(4)(E); and

G. Grant Plaintiff all other relief as the Court deems just and proper.

Respectfully Submitted,

/s/ Timothy Parlatore

Timothy C. Parlatore, Esq.
Bar No. NY0332
212-679-6312

Elizabeth M. Candelario, Esq.
D.C. Bar No. 986218
202-788-6274

PARLATORE LAW GROUP, LLP
1440 N. Edgewood Street
Arlington, VA 22201